

[00126381  /1 ]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

DEBRA P. MARIN,

                                Chapter 13
                                Case No. 12-23649 (RDD)

                       Debtor.
------------------------------------------------------------X

## STATEMENT OF CARLA MARIN AS EXECUTRIX
## OPPOSING
## THE DEBTOR'S OBJECTION TO
## THE ESTATE OF ANA BEATRIZ MARIN's PROOF OF CLAIM

1. I am the attorney Executrix of my mother's Estate along with my brother Philip, who is my co-executor and who is also an attorney. We were appointed as the fiduciaries of the Estate by Letters Testamentary by the Honorable Robert DiBella in October 2009.

2. The Debtor is an attorney.

3. The Debtor purchased the only asset she is bankrupting, the sale of investment, real property where she represented herself and her mother and for which she prepared the Note and Mortgage to purchase the same.

4. That Note and Mortgage is the subject of the Estate's claim for payments and attorneys fees per the very language drafted by the Debtor herself. The very language from which she obtained bankruptcy protection.

5. The Estate does not and never had a problem with crediting the Debtor for any payment she made pursuant to the terms of the Note and Mortgage. The problem the Estate has with the Debtor was refusal of payment, refusal to prove claimed payments, all of which resulted in the foreclosure action and hence this bankruptcy. See **Exhibit 1** made part of my Statement dated January 8, 2013 ("original Statement") which has my affidavit for summary judgment in the foreclosure action outlining the problems. The Estate is awaiting proof of pre-petition payments and is waiting for

post-petition payments still not made[1]. The Debtor and her attorney choose to not send payments to the Estate's address as provided for in the Note and Mortgage, so the Estate has to wait until its counsel receives a payment, which further complicates ascertaining payment date when calculating late fees and the like under the Note and Mortgage, which, also requires proof of payment (still lacking) of taxes and insuring the parcel to protect the Estate's interest in the premises.

6. The Debtor provided in her Note and Mortgage that my mother, now her Estate, is entitled to late fees and interest. This Bankruptcy does not change that and the Estate is entitled to know when each payment is made so it can correctly calculate what is due to it.

7. It is confusing when the Debtor's counsel claims at Objection paragraph 3 that "Debtor made at least twenty-five (25) payments, proof of which is attached hereto ... as Exhibit 'B'."

---

[1] The Estate has repeatedly requested of the Debtor proof of checks paid to our mother and the temporary administrator of the Estate. She provides the affidavit of her long time attorney friend, Carolyn Minter, who claims she provided me with cancelled checks on May 30, 2012. She did not, despite my repeated requests and the direction of Judge Forman in the foreclosure action. What she did provide me with on that day were other checks for payment of insurance and taxes as reflected in my billing provided in **Exhibit 1** to my original Statement.

If I had received those cancelled checks in May 2012, I would have gladly billed for review of them. My billing does not reflect that I was given those checks. In fact Ms. Minter told me she knew the Debtor was in default and that is why she did not provide any defense nor submitted any paperwork to defend the Debtor. I know now she was merely a placeholder for the Debtor to get into bankruptcy court so she would not have to answer for her actions in state court.

The court file in Dutchess County has nothing from Ms. Minter's supposed service and if she did provide such papers when she said she did, she would have at least filed an affidavit of service in that Court to prove she complied with discovery requests. She did not. Instead she now provides one in 2013. Why? This 2013 affidavit of Ms. Minter supports that the checks were first provided to the Estate in their Objection now in 2013, not in 2012. Further review of Ms. Minter's affirmation purporting service of checks to the Estate, she hand dates the affirmation, each of them, which provides copies of the checks with the Debtor's handwriting on them as to the supposed service date. Never once was this affirmation provided to the Estate's counsel, because the affirmation is not true; what really occurred is admitted in Objection paragraph 4: what did Debtor's counsel do when confronted that the Estate did not receive checks? Did he state he provided this supposed service affirmation to Estate's counsel? No. He merely directed the "Debtor to put a stop on these payments and a certified check was sent from Debtor's counsel to Creditor's counsel". Ms. Minter's affirmation was an after thought.

Further, the Debtor, provides the affidavit of Andrea Marin to claim she tried to give me checks in chambers with the then law clerk of Judge Pagones, our current Surrogate. Unfortunately, Ms. Van Tassel has died. But, what Andrea Marin relays is untrue and is couched in the setting where a record was never made in this matter- chambers. A record was made when we subsequently went on the record in court and yet the Debtor fails to provide a transcript to prove what she has Andrea claim. She can't produce any transcript because what is claimed is not true. Oddly, the Debtor is not stating she tried to hand over checks. The Debtor is not providing any affidavit or any other form of proof or statement here stating what she did and when. She is completely silent. Why?

Further, see the affidavit of our brother Carl Marin sworn to on 11/6/13, accompanying this Statement to refute that the Debtor never, in chambers or in court, attempted to give me any check. In fact, Andrea never states who the checks were made out to, for how much, what dates or check numbers, what they were in supposed payment of, what they looked like or even the quantity of checks. What can be probed from her affidavit is that she "saw checks" if she is believed and that is it.

Its pretty much all conclusions meant to cast myself in a poor light. Further, at no time did I ever say I was advised to not take checks by bankruptcy or other counsel. What I did say was that I was not going to let the Debtor engage me to violate the automatic stay on the advice of bankruptcy counsel to not do anything whatsoever to violate the stay because this Court would not look favorably on any such action no matter how slight. I also fail to comprehend, see Objection paragraph 5, how Andrea's affidavit proves the Debtor is not in default. In fact, Debtor's entire Objection proves it.

8. Two of those checks, number 183 and 220 clearly state they were for RENT, not a mortgage. Two check (#s 185 and 193) are unclear what is was for and also appears to states it was for RENT. The Debtor has not explained why her payment of RENT is a mortgage payment.

9. Debtor since the Note and Mortgage was signed by her in 2006, with a commencing payment in April 2006, needs to make 83 payments up through October 2013. As of the date of this statement, the November 2013 payment is not yet due. How is proof of supposedly $25^2$ pre petition payments (if you include the RENT payments) and, at most, ten $^3$ post petition payments, and then adding in three more per the temporary administrator, equated to 83 payments? It does not and the Debtor is not current$^4$.

10. I agree that the Debtor needs to provide proof of all payments once and for all so that a proper accounting of what is owed to the Estate can be recalculated. The Debtor's attorney needs to recognize that even the Objection is lacking in this regard.

11. In Objection paragraph 6, the Debtor's attorney fails to read the Proof of Claim where the amount of arrearages AND OTHER CHARGES, as of the date the claim was filed, was $253, 307.91, which was made to the best of my knowledge as stated above my name on page two of the Proof of Claim. This amount was based on the information I had and cannot include information the Debtor only provides later on. In fact, this paragraph 6 contradicts Debtor's paragraph 3 where she acknowledges the Estate's claim is to be recomputed, but fails to admit it due to her lack of any forthcoming actions in providing her cancelled checks or making all payments as required. Also we did not "bifurcate"$^5$ the claim, we stated as required what portion was secured and what was not.

---

$^2$ Of those 25 payments, 9 are attributed to the time period post death of our mother and pre appointment of executors. The previous temporary administrator, whose accounting is not final, reports the Debtor paid him 12 payments but she only showed proof of 9 in her Objection, i.e. it will show some date when paid since the temporary administrator did not provide that information. The bank of the check will provide when he did because he usually deposited the same day received.
$^3$ The Estate is in receipt of 8 post petition payments and the Estate's counsel stated to me on 11/6/13 they believe they have two more payments to be sent to the Estate. The Estate should not be put into this position.
$^4$ The Estate has no proof that the Debtor has insured the premises and has paid the taxes current.
$^5$ See Objection paragraph 6. The Proof of Claim form I don't believe is a deciphering type of document. Debtor fails to acknowledge, again, that the Estate cannot account for the information held only in control of the Debtor-her bank records. Why does she withhold such simple information? Now, despite the claiming he, the Debtor's attorney, cannot "decipher" the claims, he certainly has no problem deciphering his conclusion that the Estate seeks compounded interest. It does not. It only seeks what is provided in the Note and Mortgage. He should decipher that. See Objection paragraph 7 at page 3. How

## UNSUPPORTED ATTACKS ON ATTORNEY FEES HAVE NO MERIT

12. Objection paragraphs 8-10 are dedicated to reasonableness of attorney fees and false characterization of my billing. I am permitted to represent any client in the State of NY as long as I am competent in the subject area. NY Rules of Professional Responsibility §§ 1.0, 1.1, 1.7, 1.8 and 7.3. I can become competent by experience or by self-education. We as attorneys were taught to handle any subject of law in a competent manner. Years of experience in one subject area does not negate competency in a new area. I am admitted to the NY bar since 1990[6] and have learned and developed skills that encompass all areas of law despite the subject matter of a case. This is what we were taught to do in law school. This is why we were exposed to many subject areas. This is why rules of civil procedure extend to many actions, not just one. Not every area of law has to have its own sets of procedure alien to others. It is not the way the law works. These assets of an attorney are what permits reciprocity between sister state bars and the federal bar.

13. With this background in mind, the Debtor's attorney seeks to negate the legal work I performed for which the Estate is claiming it is due. The most glaring example is the work of the Debtor's attorney here for example. It has taken considerable more effort to point out why the broad sweeping brush of the Objection is not the sword is purports to be. Should the effort to defend the Estate be negated because it is more thorough? Should the work of broad brush, with as much canvass as it skips, be considered better, more efficient or more persuasive that a careful

---

does he know this? He never backs up this assertion he makes against the Estate. Also Objection paragraph 7 page 3 states the original debt was $130,000.00; that is wrong, the original debt was $135,000.00, see Note in **Exhibit 1** to my original Statement.

[6]   Debtor relies upon *Francis v. Atlantic Infiniti*, 2012 NY Slip Op 50198(U), a Lemon Law case, where the attorney seeking fees was only admitted to the bar for three years and where the firm's past awards of attorney fees in reported cases was relevant, they sought over $100K in legal fees for only $20K of recovery, and failed to submit proof of receipts for costs/expenses or sworn proof of attorneys skill, experience, training or background. I have provided all of this and more in summary judgment affidavit in my **Exhibit 1** to my original Statement. Obviously I have more than three years of experience, and I am not required to have expertise to request attorney fees, and unlike the *Infiniti* defendant objecting to fees, the Debtor and her attorney here has not even presented any evidence of why the case law I relied upon to establish hourly rates in Dutchess County NY is in error. Further, Objection paragraph 10 page 4, claims "Debtor should not be penalized due to Ms. Marin's lack of expertise by having to 'pay' for her education in the area of foreclosure law." Not one legal authority is cited to support this claim against me, especially when I did not charge any fee at all (not in the billing) for making myself competent in foreclosure when I read the entire NYJUR information on the topic. And, isn't that why attorneys charge legal fees, to pay for the education they received in order to give legal advice and practice law?

examination of what is required? Should thoroughness and attention to detail and facts be handicapped as not reasonable? Should attorneys who take on more than what they can handle by using that broad brush be considered reasonable, better or more efficient attorneys?

14. My affidavit in **Exhibit 1** to my original Statement details as required under NY law what I did, why I did it, how long it took me and why I did it[7]. I did not bill to become competent in foreclosure law; I used my own time, gratis, to enable me to bring the action[8], to defend against two motions to dismiss by Andrea Marin and the Debtor and to then prepare at the direction of the foreclosure Judge, a motion for summary judgment WITH an application for attorney fees because the Debtor refused to provide discovery and refused to show up in court. Judge Forman knows what this Court does not in terms of what the history and actions of the litigants in his court were. So that is why the Debtor filed for bankruptcy and that is why the Estate is the only Creditor under scrutiny and challenged.

15. Objection paragraphs 8-10 are replete with unsupported conclusions by use of "excessive", "unreasonable[9]", "modicum of experience" by Debtor's attorney who cannot in this Objection be

---

[7] To oppose the detail provided, my opposition needs to refute me, not with bare conclusions, but with facts. Despite the Objection paragraph 8 recitation of what constitutes a reasonable fee, the Debtor clearly fails to even make any factual comparison of my work and experience to constitute any legal factors or lack thereof against awarding me fees.

[8] The Estate could not afford foreclosure counsel so it was left to me to do it. The Estate is basically underwater due to the high IRS and NYS tax debt yet unpaid, which the Debtor is fully aware. I highly doubt the Surrogate would approve that I did nothing to compel the Debtor to pay the mortgage to the Estate. Ironically, this Debtor formally blamed the temporary administrator for not collecting all the mortgage payments from her by objecting to his account on that very basis. She can prove this by submitting her objections to Mr. Carlin's accounting. In other words she won't provide it because it will prove what I state.

[9] It is ironic that Debtor's counsel, after his 'an attorney's likelihood to be a witness' is "all but a given" accusations, see Objection paragraph 14, he then does exactly what he complains about in Objection paragraph 10 page 3: " Debtor's attorneys [him] regularly practice in the areas of foreclosure and the fees incurred for same, even in a protracted action taking years, [really? wow!] do not even come close to this inflated number." This is a witness testimonial if I ever read one and he provides no other information or even evidence for this other than his own "say so".

Debtor's attorney should take his own advice, so freely given at Objection paragraph 14, "The law is well-settled that an attorney [him] may not accepted employment [he did] in a contemplated or pending litigation if (s)he knows or it obvious that (s)he or a member of his/her law firm ought to be called as a witness." I think the Debtor may have her expert witness, except he fails to even allege, where he practiced foreclosure law, his experience in foreclosure, did he ever represent any foreclosure client in Dutchess County New York? What does he consider protracted litigation? Would he consider having to defend two separate meritless motions to dismiss by Debtor and Andrea Marin as unreasonable? Would he consider himself an attorney with any "modicum of experience" to consider a foreclosure action extreme when in fact the extremity was due to his adversary's meritless opposition? On what basis does he characterize what constitutes a "normal" foreclosure? Either he is a witness or Debtor's attorney, not both.

If Debtor's attorney read my billing, instead of pulling the number next to the billing month, he would have seen that 11 hours was expended to review extensive research and ZERO billing time for the research itself, as also pointed out in my summary judgment affidavit in foreclosure, where I explained I utilized the method I was taught in law school.

forthcoming with this Court about the cases he relies upon; they are not factually similar to hold some sort of precedential value to the issues here. Such conduct is disingenuous and makes the Estate's job more laborious. This was the same problem in the foreclosure matter. The Debtor and Andrea Marin made motions that made no sense whatsoever, but the Estate had to address them and the court denied them. So if the problem, the legal work required to make the Debtor account for her legal obligations to the Estate, is created by her, then why should she be permitted to then complain? She should not.

16. The work alone to decipher the Note and Mortgage, which had contradicting terms between them, which was printed in very small print, which had no point of reference for a first payment date, which required careful adhesion to contradicting default provisions, to what was required to be in the default notice so that the Estate was in compliance in order to bring a foreclosure, all where the creation of the legal handiwork of the Debtor. This is now characterized as time "supposedly engaged in" by me. Well who else's time was engaged then? They have no proof of anything else, they fail to rebut the work I did, they fail to address why I am not permitted to conduct research or review it (I know of no attorney who also has the ability to know each and every case that comes out of any or all courts or knows the contents of treatises or law journals by mental telepathy) because to accept the position of the Debtor, then all attorneys are not free to use their independent judgment or skill in their practice of law. It is not a cookie cutter process.

---

So, Objection paragraph 10, page 4 is not true: I did not engage in 24 hours of research. I engaged in 11 hours to review extensive research which means, reading, it highlighting it and rereading the highlighted portions which eventually comprised what my affidavits needed to contain and what was needed in my legal memoranda.

If Debtor's attorney spent more time in reviewing the law, I would not be spending the time I have in preparing this Statement to correct every untruth, misstatement or mischaracterization of the law, or pointing out each and every instance where his attempt to negate my legal ability folds back upon himself and the Debtor. If Debtor's attorney knew about SCPA §2307-a or SCPA §2111 or the various case law where attorney executors abound, by doing thorough research and not speedy or broad brushed research, my opposition to the Objection would have been less time consuming, short and to the point.

## ATTORNEY EXECUTORS CAN GET LEGAL FEES in NY

17. NY permits attorney-executors to represent Estates, rooted in the common law[10]. In fact, SCPA §2307-a provides for the commissions of attorney-executor. This statute provides certain disclosures required by attorneys who prepare wills and whose clients want to name them as executor. In order to obtain full executor commissions, plus attorney fees for legal work on behalf of the Estate, the attorney drafter of the will needs to have their client, the testator, sign the required disclosures prior to the execution of the Will.

18. One of the SCPA §2307-a disclosures states the following:

> Disclosure. When an attorney prepares a will ... and such attorney... is therein an executor-designee...if such attorney ... renders legal services in connection with the executor's official duties, such attorney ... is entitled to receive just and reasonable compensation for such legal services, in addition to the executor's statutory commissions. SCPA §2307-a 1(d).

19. Further, SCPA §2111 specifically provides for *ex parte* applications for advance payment of fees of an attorney-fiduciary.

20. It is axiomatic that when a mother appoints her attorney children as her executors, they can not only get commissions but they can also be compensated for their legal work on behalf of the Estate, of course subject to Surrogate approval. Here my mother wrote her own Will in her own handwriting and the Debtor was *unable to prove* throughout all the litigation she instigated against myself and Philip, that we had anything to do with the creation of the Will and could not prove undue influence or fraud. See *Matter of Marin*, 82 AD3d 982 (2nd Dept 2011), 17 NY3d 704 (2011).

21. Despite the legal basis for attorney executors such as myself and the complete lack of authority to deny the Estate attorney fees (or a deny claim to pay fees) because of my fiduciary status, I will address what the Debtor through her attorney speciously argues: that a *pro se* litigant is not entitled

---

[10] See *Broughton v Broughton*, 43 Eng Rep 831 (1855); *In re Hallenback's Estate*, 122 F.Supp 212 (1954); *Matter of Stalbe*, 130 Misc.2d 725 (Queens Co. Surr. Ct., 1985).

to fees, even if an attorney. For this proposition they try and find support in cases that are not in the least bit analogous and do not even attempt to argue why those cases are factually similar to the Estate's claim. None of the legal cases relied upon by the Debtor involve attorney fiduciaries under NY's SCPA or EPTL. Even without consideration of SCPA §2307-a or SCPA §2111, the Debtor's position still fails.

22. In citing *Kay v. Ehrler*, 99 US 432(1991) and *Mayerson v. DeBuono*, 181 Misc2d 55 (1999), the Debtor's attorney fails to tell this Court that those two matters involved attorney fees provided by statute, both Federal and NY State.

23. Here that issue is not existent because we are dealing with a Note and Mortgage prepared by this attorney Debtor for her own benefit when she purchased an investment property from her mother under terms favorable to her and not her mother. The Debtor herself provided for the attorney fees sought here.

24. The Estate is not seeking any statutory attorney fees.

25. Further, those statutes dealt with federal purpose and policy considerations which requires litigants to retain counsel[11] (*Kay*) or to provide the reimbursement of fees actually incurred (*Mayerson*). *Id.*

26. Further in both cases had the attorneys named themselves petitioners in their individual capacity[12]; none were executors of an Estate who are the fiduciaries who are legally required to protect interests of the Estate and must caption themselves as Executors of the Estate of "XYZ".

---

[11] For a myriad of reasons which had no factual basis in the record, merely mentioned in dicta. *Kay* involved The Civil Rights Attorney's Fees Awards Act of 1976, as amended, 42 USC §1988, which provides for those who do not have the means to afford legal counsel to be able to present their legal claim. *Kay*'s rationale is that an attorney being able to present a legal claim has the means to afford legal counsel, i.e. himself. *Kay* did not provide legal fees to an attorney representing himself and there is nothing in that decision that remotely suggests its application to facts here concerning a Note and Mortgage or an Estate. Pointedly, an Estate cannot act on its own or represent itself, hence the fiduciary, who can be an attorney to represent the Estate or can hire an attorney one (either way it is not a *pro se* representation) or the fiduciary can be a non attorney who has to retain an attorney, whether *pro bono*, on retainer or on contingency. This is consistent with our mother's testamentary scheme: she had her children educated as attorneys and appointed them as her fiduciaries upon her death. It was her right to so do.

[12] Generally, attorney §1983 litigants are not entitled to the fee shifting benefits of §1983. In *Mayerson*, involving Individuals with Disabilities Education Act ("IDEA"), 20 USC §1400 *et seq*, parents have a right to represent the child, but in so doing, the IDEA provides statutorily that the relationship between parent and child is so close, the statute makes that a *pro se* relationship and the attorney parent is not entitled to fees. Unlike the IDEA, 42 USC § 1983, contains no such identifying

27. Debtor's counsel makes much hay about the foreclosure complaint. The foreclosure was commenced in NY State court in Dutchess County and never once did the Debtor complain of my or Philip's representation of the Estate. Judge Forman did not have a problem with it either, because I am permitted by NY law. In fact, her whole objection to the Estate's proof of claim rests upon myself, and not Philip who is my co-executor and is also an attorney.

28. The Debtor and her attorney can't say one thing and then another and remain credible. If you look at the Complaint provided in Objection Exhibit H, the first page clearly states: "The Plaintiffs...as the Executors of and attorneys for the Estate..." It cannot be more visible than that and it is in conformity with EPTL §11-3.1. We identified ourselves as the Plaintiffs under our signature line and that we were also attorneys. The use of *pro se* is of no legal consequence because our representation was pursuant to EPTL §11-3.1, and it really was a left over from when we represented ourselves in the probate of the Will when we were not executors (to alert the court we were lawyers). Nothing more. Debtor did not argue about this in state court, but instead does so here.

29. The Debtor and her attorney fail to examine the facts of the cases they cite and instead choose to characterize them differently for their own purpose. They also do not fully comprehend the Estate Law in NY, see their Objection paragraph 12: the foreclosure action was brought by the executors of the Estate because the Estate acts through its fiduciaries; there is no legal requirement that the foreclosure be brought "as an attorney for the estate": It is illogical and I do not comprehend that paragraph 12. Now compare that with their paragraph 13: now they claim I am required to have a fee arrangement or written retainer with the Estate under 22 NYCRR §§1215.1, 1215.2[13], but isn't

---

language and a *pro se* attorney representing his child can get attorney fees. *cf., McLaughlin v Boston School Comm.*, 976 F.Supp. 53 (D Mass 1997).
    Importantly, there is no NY statute prohibiting fees to an attorney executor in a foreclosure action brought on behalf of the Estate because I am acting in a fiduciary capacity. First and foremost the law of wills in NY is to serve the intent of the testatrix, *Matter of Estate of Herz*, 85 NY2d 715 (1995). For the Debtor here to seek a benefit contrary to that intent, especially for a Note and Mortgage she herself wrote, is beyond the pale and has no basis in law.
[13]    I am going to sign a retainer agreement with myself? See Debtor's paragraph 13.

their whole objection to the Estate's claim that it cannot seek its attorney fees or is it that the Debtor just does not want the Estate to pay[14] me attorney fees? I don't know.

30. Whether I and Philip had to write retainer agreements for ourselves or whatever is the Debtor's point, her counsel fails to acknowledge that, even if required, non-compliance with 22 NYCRR §1215 does not bar attorneys from seeking legal fees since payments may be sought under a theory of *quantum meruit*, see *Rubenstein v Ganea*, 41 AD3d 54 (2nd Dept 2007), and fails to acknowledge the supervision of the Surrogate over the affairs of the Estate[15]. See NY's SCPA §209 (for example); NY Constitution Article 6, §12.

31. EPTL §11-3.1[16] provides that a personal representative of an estate including a fiduciary/executor, is permitted to bring an action on behalf of the estate and must defend against an action involving the same.

32. Equally ludicrous is Debtor's Objection paragraph 14. Her counsel was not involved in the foreclosure court and he fails to reveal/or failed to fully informed himself of the facts/failed to read my billing that his own client represented herself through two dismissal motions, one by her and the other by her faithful witness Andrea Marin, which were rejected by the foreclosure court.

33. But, read carefully, paragraph 14 is a mish mash of conclusion, unsupported claims against me without having any merit here in the Estate's claim for attorney fees. Likelihood of being a witness, but not definitively; I knew or it was obvious I was going to be a witness? How so for both claims? The Debtor's attorney does not say. He only concludes it was "all but a given", whatever legal

---

[14] During the pendency of this Bankruptcy, the Surrogate issued an order that the Debtor was no longer entitled to take under her mother's Will and hence, the Debtor has no ability to object to any fee application I may make in Surrogate's court. *Matter of Marin*, NY Slip Op 51075(U) (2013). The only ability she has to object is here. This does not include her out of court participation with any of Andrea Marin's Objections in Surrogate court. Debtor also did not object to the action of the Surrogate wiping out her claim to the Estate as a violation of the automatic stay.

[15] SCPA §2211(1) authorizes the Surrogate's Court to inquire, *sua sponte*, into all matters set forth in a fiduciary's accounting even when lacking objection. *Matter of Stortecky*, 85 NY 2d 518 (1995).

[16] "Any action, other than an action for injury to person or property, may be maintained by and against a personal representative in all cases and in such manner as such action might have been maintained by or against his decedent." There is no prohibition here that the fiduciary cannot be an attorney or as such they are precluded from bringing such actions as permitted under EPTL §11-3.1. None. In fact, the support for the same is found in SCPA §2307-a. See *Matter of Stalbe*, 130 Misc2d 725 (Queens Co. Surr. Ct. 1985), an attorney executor was not permitted to pay himself legal fees or executor commissions prior to court approval. Hence the Estate's claim for fees here.

authority that is, I do not know. I had no part in the sale of my mother's property to the Debtor because the Debtor represented both herself and her own mother. Further, I was never the Estate's attorney in this bankruptcy where the Estate is a creditor and has incurred additional attorney fees to be requested since the Objection here was made. I was properly acting as the attorney for the Estate (the mortgagee in a foreclosure action) and was never challenged nor removed or sought to be removed. The Debtor cannot see this difference.

34. What Debtor and her counsel have not understood is that I myself am not asking for attorney fees in this Bankruptcy-I have not filed a proof of claim for them on my own behalf. I filed as Executrix a Proof of Claim for the Estate's rights in the Note and Mortgage to seek attorney fees. This is how they were asked for in the foreclosure court because I was not the mortgagee. Any monies paid to the Estate, from whatever source, are subject to the Surrogate's authority, *ie.* SCPA §§ 2110, 2111, 2310, 2311: his powers of review over my actions in acquiring and the handling of Estate funds.

Dated: November 7, 2013

_____
CARLA L. MARIN
Executrix of the Estate of Ana Beatriz Marin

# AFFIDAVIT

State of New York    )
                     ) ss:
County of Putnam     )

          **CARL F. MARIN, JR.**, being duly sworn deposes and says:

1. I am the brother of Carla Marin and the debtor Debbie Marin and Andrea Marin. I have read the affidavit of Andrea Marin regarding a court conference in chambers in the Surrogate's Court, in Poughkeepsie, NY that she swore to on February 4th 2013. Andrea Marin relates false statements in that affidavit: Carla Marin never said she was refusing to take mortgage payments, she said she was not getting any. Debbie told the previous Surrogate right after my mother died in 2007, which was about January 2008, she was not going to pay Carla or Philip the mortgage because she did not trust them. I remember this because I had to continue to pay my mortgage payment to the Estate. Carla also told them in Poughkeepsie in January 2013 that she was advised that the Bankruptcy stay was something she did not want to violate and that the Bankruptcy attorney told her to not do anything in Surrogate's Court to violate the stay because the stay applied to it as well.
2. Debbie never tried to hand anything over and when we went into the courtroom to speak to Judge Pagones after being in chambers, Debbie was now on the record and did not try to hand over any check then either. Debbie never mentioned she was in bankruptcy either in Chambers or in the Courtroom, Carla had to do it and then gave the law clerk in chambers a copy of the automatic stay. Debbie then admitted she was the bankrupted person.
3. Debbie is an attorney and in the past advised me on some legal issue which I did not take her advice because my mother told me to not listen to her, and I did not go for it and she even tried to get me to go against Carla and Philip as Executors- they told my attorney this who reported it to the previous Surrogate. She even had her friend, Carolyn Minter call my house to try to get me to go against my family right after my mother died. Debbie is a long time friend of Carolyn Minter and has practiced law with her. I believe she still does.

_____
CARL F. MARIN, Jr.

Sworn to before me this
6th day of November 2013.

_____
JOYCE SENATORE
Notary Public, State of New York
No. 04SE6274803
Qualified in Putnam County
Commission Expires January 14, 2017