UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X     Chapter 13
                                        Case No. 12-23649

In re Debra Marin,
                                        Affidavit of Debtor
                                        With Supporting Law


                        debtor(s).
----------------------------------X

State of New York        }
                         : ss
County of Westchester    }

       Debra Marin, an attorney duly licensed to practice in the
State of New York, hereby affirms and says under the penalty of
perjury:


       1. Claim number 1 as amended should be reduced to remove
any claim of legal fees owed as Creditor did not establish the
condition precedent to foreclosure: NO ACCELERATION OR
ABANDONMENT OF PROPERTY AS REQUIRED BY THE MORTGAGE TERMS.


       2. Pursuant to paragraphs "18" and "19" of the mortgage,
reasonable attorney fees are granted to Carla only upon
"acceleration or abandonment" of the property.  (Despite what
Carla repeatedly alleges, I did not write the note or the
mortgage):


                                1

18.   **Acceleration; Remedies.**   Lender shall give notice
to Borrower prior to acceleration following Borrower's
breach of any covenant or agreement in this Security
Instrument (but not prior to acceleration under
paragraphs 13 and 17 unless applicable law provides
otherwise.) the notice shall specify:  (a) the default;
(b) the action required to cure the default;  (c) a
date not less than 30 days from the date the notice is
given to Borrower, by which the default must be cured;
and (d) that failure to cure the default on or before
the date specified in the notice may result in
acceleration of the sums suns secured by this Security
Instrument, foreclosure by judicial proceeding and sale
of property.   The notice shall further inform the
Borrower of the right to reinstate after acceleration
and the right to assert in the foreclosure proceeding
the non-existence of a default or any other defense of
Borrower to acceleration and foreclosure.   If the
default is not cured on or before the date specified in
the notice, Lender at its option may require immediate
payment in full of all sums secured by this Security
Instrument without further demand and may foreclose this
Security Instrument by judicial proceeding.   Lender
shall be entitled to collect all expenses incurred in
pursuing the remedies provided in this paragraph 19,
including, but not limited to, reasonable attorney's
fees and costs of title evidence.

19.   **Lender in Possession.**   Upon acceleration under
paragraph 19 or the abandonment of the Property, Lender
(by judicially appointed receiver) shall be entitled to
enter upon, take possession of and manage the Property
and to collect the rents of the Property and collection
of rents, including, but not limited to receiver's fees,
premiums on receiver's bond and reasonable attorneys'
fees, and then to the sums secured by this Security
Instrument.


A copy of the Mortgage is attached as Exhibit A.

2

3. Paragraph 18 clearly states that the Creator must define the action that the debtor is required to cure the default.

4. The purported acceleration is a handwritten letter by the Creditor attached to their claim, and attached here as Exhibit B.

5. That letter was never received by me.

6. The Creditor even states in the letter:  "Let this letter serve as your 30 day notice under the Note for payments of principal and interest not paid since October 28, 2007, since I do not know the dates you paid Bill Carlin, the 12 mortgage payments in 2008 for his accounting – I know you made some payments after he was appointed. . . . Under the Note, these mortgage payments are immediately due . . . . **Also consider this prior notice to acceleration per mortgage paragraph 18 – you have defaulted in mortgage payments as specified herein, you can cure your default by providing proof of payment or by making payments together with late charge; you have 30 days to cure or attempt to cure from the date of this notice and failure to cure by such date will result in a judicial foreclosure complaint to be filed against you and request to sell the property mortgaged because I will consider the mortgage/note accelerated due to your uncured default.**"

7. No formal acceleration was ever made. Nor was the amount allegedly owed ever made clear in the purported letter above, to even allow me to cure.

8. Even assuming arguendo that the Mortgage was properly accelerated, which clearly it was not, Creditor's claim of $19,093.75 for legal fees to foreclose on a mortgage is clearly excessive, out of the norm for a foreclosure matter and quite simply outrageous.

9. Carla's billing statements show a pattern of excessive billing practices which she tries to mitigate by "not charging for research time" and by reducing her hourly rate from $350 an hour, the rate sought in the foreclosure summary judgment, to $325 an hour, the rate now sought in the September 15, 2015 Amended Notice of Claim.

$8, 693.75 + $4, 550 =      $13, 243.75

**COURT TIME:  14 hours @ $325 an Hour for Three Court Conferences**

10.   On April 11, 2011, Carla Marin charged the Estate 4 hours @ 325 an hour, or $1,300, to travel to Poughkeepsie Supreme Court for the first appearance in this matter.  I personally attended that court conference and the time spent was

30 minutes, not four hours. Carla does not segregate her travel time to Poughkeepsie vs. actual court time.

11. On April 25, 2012, Carla charged the Estate 5 hours @ $325 an hour, or $1,625, for a settlement conference (her parking receipt indicates $4.00.) If the conference started at 10:00 a.m. Carla would expect this court to believe she stayed in court until 3:00 p.m. I dispute this charge since my attorney Ms. Minter, advised me the conference with the judge lasted about 30 minutes but she did stay with Carla about the same amount of time to try to resolve the case to no avail.

12. On May 30, 2012, Carla charged the Estate 5 hours @ $325 an hour or $1, 625, for another settlement conference, again expecting this court to believe she was with the court from 10:00 a.m. to 3:00 p.m. This was the date Ms. Minter brought copies of all my cancelled checks to Carla, along with the other documents Carla referenced in her billing note. Ms. Minter advised me the conference with the court lasted about one hour since Carl's free attorney, George Delaney, died and that caused much confusion with Carl.


**Draft of Pleadings:** 9.5 Hours @ $325 an hour or  $3, 087.50
Draft of Summons with Notice and Complaint, Lis Pendens and
Notice to Tenant in Foreclosure.

13.        On December 19, 2009, Carla charged one hour to draft a rambling default notice, in narrative form, that Carla personally handwrote.  Carla did not charge for any investigation into the books and records of the Estate, including review of the mortgage and note terms, to verify I was in arrears to the Estate, especially for the payments to my mother prior to her death from April 2006-November 2008. Without review of the books and records or applicable law, this letter is a purely administrative task and should not be billable at attorney time.  Similarly, Carla charged .25 hours @ $325 an hour or $81.25, to prepare an affidavit of mailing. This is an administrative not legal task and is usually performed by support staff.  Carla herself handwrote the affidavit.

14.  February 19, 2009, Carla combined drafting of pleading charges with travel charges, billing the Estate 5 hours @ $325 an hour, or $1,625.00 plus $5.95 in parking and copying charges at the clerk's office.  It is not possible to delineate how much time Carla spent drafting the Summons and Complaint and how much time it took her to travel from Carmel, NY to Poughkeepsie New York to the Dutchess County Clerk's office.  Carla should have but did not segregate these charges.  Travel to Dutchess County Clerk's Office to obtain the recorded deed, mortgage and note was unnecessary since this administrative task could have been

accomplished in minutes via the Dutchess County Clerk's website for a few dollars.

15.   On February 22, 2009, Carla charged the Estate 3.5 hours @ $325 an hour, or $1,137.50 to draft the Lis Pendens, Finalize Summons, Complaint, Lis Pendens, and Notice to Tenant in Foreclosure.   An attorney experienced in this field would have had the forms readily available and arguably would have had his paralegal or assistant draft the forms and the attorney would have reviewed the documents for accuracy.   Carla failed to segregate how much time she took to draft the pleadings as opposed to how much time she took to "compile copy sets for filing and service;   [meet] with George Delany to Verify Complaint;   draft blue backs and travel to Dutchess County Clerk's office to file foreclosure action and lis pendens."   All administrative tasks not requiring attorney billable time. Carla also charged me for the four defendant's, one her brother Carl Marin and for Andrea Marin.   Carla's argument to the supreme court that they were necessary parties to this action since they have a beneficial interest in the Estate, should have required her to name herself and Philip Marin as defendants since they sit in the very same position as Carl Marin as equal beneficiaries of this estate.   At the time of filing, Andrea Marin and myself were entitled to specific bequests.   Arguably, Carl Marin and Andrea Marin could have signed appropriate

documents so that they did not have to be named defendants, thus
saving billable time.  An attorney experienced in this area of
law would have known this.

**ADMINISTRATIVE TASKS THAT WERE BILLED AT ATTORNEY TIME:  12.25
hours @ $325 an hour or $3, 981.25.**

16.  On the following dates, Carla Marin charged the Estate
12.25 hours in attorney time @ $325 a hour or **$ 3,981.25** for
tasks that are purely administrative in nature, many of which
most firms would not bill their client's to perform since they
have salaried staff to handle:  phone calls with Carla's
brothers (Philip and Carl), phone calls with court personnel to
confirm court dates, drafting of scheduling/adjournment letters,
time spent to mail letters, send faxes, create scanned copies of
letters and to travel the ¼ mile from her office to the Carmel
Post Office to mail correspondence, a trip she claimed was
required especially for this foreclosure.

| | |
|---|---|
| March 2, 5, 10, 12, 30 of 2010 | 2.75 hrs |
| May 4, 2010 | .75 hrs |
| June 24, 2010 | .75 hrs |
| January 20, 2011 | .25 hrs |
| February 9, 10, 25, 2011 | .75 hrs |
| March 5, 2011, | .25 hrs |
| May 7, 2011 | .25 hrs |
| June 2, 6, 7, 8, 2011 | 1.75 hrs |
| September 6, 2011 | .25 hrs |
| December 18, 30 2011 | .25 hrs |
| January 3, 5 2012 | .50 hrs |
| March 2, 2012 | 1.00 hrs |
| April 24, 27, 2012 | .50 hrs |
| May 15, 17, 2012 | 1.00 hrs |

```
June 1, 2012                    .25 hrs
July 1, 26, 27, 31 2012       1.00 hrs

Total                         12.25 hrs
```

## Excessive Attorney Time Billed for Legally Unnecessary Work: 9.5 HOURS @ $325 AN HOUR OR $3,087.50

17.  On March 18, 2010, Carla charged 1 hour or $325.00 to review my nine page Verified Answer with Affirmative Defenses. .25 hours would have been what a reasonable attorney required, especially since no response to the pleading was necessary.

18.  On April 2, 2010, Carla charged 2 hours @ $325 an hour, or $750.00 to review the Estate probate file, including transcripts of 1404 depositions of Andrea Marin as well as the appellate file when I appealed the decision admitting the will to probate, Andrea's unidentified "police report" and Andrea's objections to account.  Not one of these documents can have anything to do with the issues regarding the foreclosure at issue in this action.

19.  On April 4, 5 and 7, Carla charged a total of 5.5hours at $325 an hour, or $1,787.50, to review Andrea Marin's motion to dismiss, compile the exhibit list and review all of Andrea Marin's "past emails."  On May 4, 2010 and June 24, 2010 Carla even " rejected " Andrea's allegedly "late" Answer to the foreclosure Complaint, incurring another hour of billable time at $325.00.

20.    Carla's billing statements indicate she spent a total of 6.5 hour fighting Andrea's Motion to Dismiss which was a completely frivolous expenditure of time since Carla Marin voluntarily released Andrea from this action, after Andrea's motion was denied by the state court.

21.    The essence of Andrea's April 2010 motion was to release Andrea from the foreclosure case since she did not have an interest in the property;  instead of releasing her, Carla Marin billed the Estate (and now me) $2,122.50 in attorney fees $85.90 in costs to keep Andrea in the case and not release her. After the lower Court's denial of Andrea's motion to be released from the foreclosure action, Carla Marin then motioned the lower court to release Andrea Marin from the foreclosure action in the August 8, 2012 Summary Judgment application, (see paragraph "12" of the notice of motion.)  Such an action not only is unreasonable, but evidences how Carla Marin allowed her personal animosity against Andrea cloud her professional legal judgment when representing the Estate's interest in the foreclosure action. No true client would have accepted such costly motion practices where no real gain could be had, as Carla engaged in with Andrea.  It is not reasonable to require me to pay for such frivolous motion practice.

## QUESTIONABLE BILLING ENTRIES:   5 hours @ $325 an hour or $1,625.00

22.   Compared to Andrea's single issue motion to dismiss, my May Motion to dismiss contained several issues, yet Carla only charged 4.5 hours to prepare an answer, or $1,300, billed during the time period on May 31, April 17, 29 of 2012.  Three of the 4.5 hours were billed for time spent on June 29 where, according to the billing note, Carla billed for three attorney hours but the work was mostly administrative in nature.  Carla did not segregate her attorney time from her administrative time, billing to finalize her Affidavit, draft the affidavit of service, compile motion papers for service; meet with George Delany for some unexplained reason, her " travel to the Carmel Post Office to pay for postage so G. Delany could serve the same."

23.   On June 13, 2011, Carla charged 2 hours @ 325 an hour, or $700 to review " … Letter from D. Marin dated June 7, 2011 enclosing Discovery requests:  Interrogatories, notice to take depositions, demand for disclosure, witness demand and discovery and inspection notice."  Carla here admits to receiving the demands, charged $700 to read the demands, failed to object or otherwise respond to the demands then claimed in her Note of Issue that she complied with these very same discovery demands.

Dated: White Plains, NY

July 11, 2017

_____

Debra Marin

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

                                    Case No.  12-23649

In re Debra Marin,

                                    Affidavit of Service


                    debtor(s).
------------------------------------X

State of New York        }
                         : ss
County of Westchester    }

I, Amy Radak, being duly sworn, hereby deposes and says:


        I am and at all times during the service, was not less than
18 years of age and reside in the County of Westchester.

        Service of the Affirmation dated July 11, 2017 was made on
July 11, 2017 by enclosing a true copy of same in a postage paid
envelope and causing same to be delivered to the United States
Postal Service for service by first class mail to:

Wendy Weathers
Cabanillas & Associates, P.C.
120 Bloomingdale Road
White Plains, NY 10607.


                                    _____
                                          Amy Radak


Sworn to before me this
  11 day of  JULY, 2017
_____
Notary Public

        MICHAEL SCHWARTZ
    NOTARY PUBLIC, STATE OF NEW YORK
            NO. 41-4745659
    QUALIFIED IN QUEENS COUNTY
    COMMISSION EXPIRES  12-31-17



MTX 00
# 1050

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on the 28th day of April, 2006. The Mortgagor is Debra P. Marin, a single woman ("Borrower"). This Security Instrument is given to Beatrice Marin whose address is 65 Hill and Dale Road Carmel, New York 10512 ("Lender"). Borrower owes Lender the principal sum of $135,000.00 (One Hundred and Thirty Five Thousand Dollars and No Cents). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments pursuant to scheduled payments included therein . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Dutchess County, New York

See Attached Exhibit "A"

This mortgage is (i) assumable; and (ii) additional financing is permitted without Mortgagee's prior written consent.

TOGETHER WITH all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this security instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2.Funds for Taxes and Insurance.   Intentionally Left Blank

3.Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

4.Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender upon Lender's written request receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied as only the Borrower shall see fit.

6.Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7.Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

8.Inspection. Lender or its agent may not make entry upon and inspections of the Property without prior written consent of Borrower. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9.Condemnation. Intentionally left blank.

10.Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.

Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

11.Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12.Loan Charges. Intentionally left blank.

13.Legislation Affecting Lender's Rights. Intentionally left blank.

14.Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

LIBER 1683 PAGE 754                              754

T-CG-85-57

Title No.

### SCHEDULE "A"

The premises in which the insured has the estate or interest covered by this policy

ALL that certain plot, piece or parcel of land situate, lying and being in the Town of Pawling, County of Dutchess and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Route 292 where same is intersected by the division line between lands now or formerly of Schultz on the north and the herein described premises on the south;

thence continuing along said division line North 71° 46' 15" East 214.80 feet to the westerly line of lands now or formerly Girl Scout Council of Greater New York;

thence continuing along said lands South 05° 54' 02" East 13.59 feet, South 46° 48' 24" East 70.08 feet and South 19° 09' 33" East 198.91 feet to the northerly line of lands now or formerly of Fuhrmann;

thence continuing along the northerly line of lands now or formerly of Fuhrmann South 87° 32' 20" West 234.74 feet to the easterly side of Route 292;

thence continuing along the easterly side of Route 292 North 17° 28' 00" West 68.00 feet and North 27° 41' 30" West 143.88 feet to the point and place of BEGINNING.

Grid #
N

IMPROVED OR TO BE
IMPROVED BY A ONE
OR TWO FAMILY
DWELLING ONLY

10M 12/84

**15.Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16.Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17.Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal laws as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**18.Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**19.Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender (by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys fees, and then to the sums secured by this Security Instrument.

**20.Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**21.Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include attorneys' fees on appeal and at trial.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Agreement and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Michael J. Posner

Witness Print Name: _Richele Makkas_

_NICHOLE MAKESIAS_

Witness Print Name: _____

_Debra P. Marin_

STATE OF FLORIDA; COUNTY OF PALM BEACH ): ss

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared Debra P. Marin known to me to be the person described in or who has produced a drivers license as identification and who executed the foregoing instrument and acknowledged before me that she executed the same for the purposes set forth expressed. WITNESS my hand and official seal in the County and State last aforesaid this 28th day of April, 2006.

Print: _____

Sign _____

My Commission Expires: _____

Commission No. _____

Michael J Posner
My Commission DD347937
Expires October 14, 2008

K & K
Debra Marin, Esq
10 Columbus Ave
Valhalla, NY 10595

KPNO 155412
KENNETH PIPP NO AGENCY, LTD.
2 So. Division Street
Peekskill, New York 10566
(914) 739-8283



DECEMBER 19, 2009

TO: Debra P. Marin: 10 Columbus Ave Valhalla NY
                     358 Route 292 Holmes, NY

RE: Your default on note and mortgage for 358 Route 292 Holmes NY

I am attaching a copy of the note and mortgage both dated April 28 2006 that I found amongst Mum's papers and which I gave to Bill Carlin in 2008 when he took over.

As far as I can tell, you did not make any mortgage payment to Mum for October 2007. You did not send any payments to 65 Hill & Dale Road Carmel NY as required stated in the mortgage.

Please advise and send me copies of all cancelled checks or receipts of payment for such mortgage since April 2006 and advise of the note and mortgage enclosed is complete, which I am somewhat certain.

Under the mortgage you have to pay all realty taxes, liens etc on the property in Holmes. Please advise of such payments are current with proof of the same.

Let this letter serve as your thirty day notice under the note of payments of principal + interest not paid since October 28 2008, since I do not know the dates you paid Bill Carlin the twelve mortgage payments in 2008 per his accounting. I know you made more payments AFTER he was appointed. I had asked in the Surrogates court in 2008 prior to his appointment why you did not pay your

effect you did not trust to send your mortgage payments to either Philip or myself at 65 Hill & Dale Rd Carmel NY 10512.

Under the note, these mortgage payments are immediately due.

Further, under the mortgage, you are to have the premises mortgaged insured per paragraph 5 of such mortgage and are to provide receipts of paid premiums and renewals. The amount insured should be the fair market value of the premises. Please provide proof of and amount of insurance within 30 days.

Also provide proof of mortgage insurance that should have been purchased by you following the mortgage at closing, if you even had a closing with them.

Also consider this prior notice of to acceleration per mortgage paragraph 18 — You have defaulted in mortgage payments as specified herein, you can cure your default by providing proof of payment or by making payments together with late charges; you have 30 days to cure or attempt to cure notice from the date of this notice and failure to cure by such date will result in a judicial foreclosure complaint to be filed against you and a request to sell the property mortgaged because I will consider the mortgage/note accelerated due to your uncured default.

Obviously you will have the right to reinstate after such acceleration in period & as permitted by law a

You have the right to assert in the a any foreclosure proceeding the non existence of a default or any other defense you may have to acceleration and foreclosure.

If the default is not cured within on or before thirty days from the date of this notice, I will ever ask the option on behalf in Mom as mortgagee through her estate as executrix to require immediate payment in full without further demand on you and will foreclose the mortgage by judicial proceeding and I will ask for but will not be limited to ~~collection of~~ ~~paragraph contained~~ all expenses involved in pursuing the remedies provided for in paragraph of your mortgage including but not limited to attorneys fee.

Please note paragraph 19 of the mortgage regarding a receiver on acceleration.

Please cure your defaults on or before January 19, 2010 which is 31 days from the date of this notice. I believe you have the premises rented to the same tenants than had at about $1500.00 per month rent.

P.S. I am hereby giving this notice to your home address 10 Columbus Ave Valhalla NY over in addition to the address provided it be sent in the mortgage.

Thanks.

Ciria _____
Executrix of the Estate of _____ MARIN

12/19/09

2

Affidavit of Service

State of New York )
                  ) ss.:
County of Putnam )

   Carla L Marin being duly sworn
deposes and says :

           On December 19, 2009
  I mailed a default notice dated 12/19/09
             addressed to her,
upon Debra P Marin at 10 Columbus Ave
Valhalla NY 10595 and at 358 Route 292
          each
Holmes, NY 12531, by regular mail with
postage prepaid in a sealed envelope by
depositing the same at a United States
post office depository located in the State
of New York .

                  _Carla L Marin_
               CARLA L. MARIN

Sworn to this _21st_
day of December 2009
_George T Delaney_

GEORGE T. DELANEY
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02DE5027833
QUALIFIED IN WESTCHESTER COUNTY
COMMISSION EXPIRES MAY 16, 2010