UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

In re Debra P. Marin,

Debtor
_____X

Case Number: 12-23649

**AFFIRMATION**

      **CARLA L. MARIN,** an attorney duly licensed to practice before the courts of the State of New York, affirms the following under the penalties for perjury:

1. This affirmation is to rebut the affirmation of Michael Schwartz sworn to on 10/30/15 and Carolyn Minter affirmed to on 7/18/17 and the Debtor affirmed to on 7/11/17.

2. I have attached to this affirmation **Exhibits A- G** which is my file in the foreclosure.

**BACKGROUND**

3. Mr. Schwartz affirms in his affirmation paragraph 2 that I am a creditor; I am not. The claim was filed by the Estate of Ana Beatriz Marin. I am the executrix of that Estate and as such stand in the shoes of my mother, who sold a piece of property to the Debtor who represented my mother and herself in a below fair market value sale in 2006[1]. At the same time, I represented my mother in like sales to each of my two brothers: Philip who was an attorney and Carl who was not. The terms of the sale including the mortgages where done on terms of an arms length transaction. The

---

[1] See **Exhibit F** page 21 where the calculation for the property price based upon NYS transfer tax of purchase price divided by 500 multiplied by 2.  https://www.tax.ny.gov/bus/transfer/rptidx.htm;  20 NYCRR 575.11(a)(10).

mortgages where of the same terms my mother had with the Putnam County National Bank and was the mortgage terms she offered to my brothers.  I was unaware that my mother had sold the property at issue here to the Debtor but was aware that my mother was going to sell it to her because my mother mentioned it to me.

4. My mother was not an attorney.  The Debtor was an attorney in 2006.  She represented both herself and my mother and drafted the note and mortgage and other documents.  See the mortgage record and return notation at the bottom of the last page of the mortgage indicating that it be returned to the Debtor.  This is highly unusual since the original mortgage and note documents belonged to the Lender, my mother.  Note that the Debtor executed this mortgage in Florida where she has a home.  My mother was never in Florida  and was in her home in Carmel, NY in all of 2006.  This is why my mother's papers did not include any originals.  At the time the Debtor bought this house from my mother, she believed my mother made her the executor of her estate and believed that upon death, she would be forgiven the balance of this 30 year mortgage.  My mother was 79 when she died in 2007 and 77 years of age in 2006 when she sold the premises to the Debtor. The terms of the notes to Philip and Carl where not 30 years, but 15 years due to my mother's age.

5. I first saw copies of the note and mortgage with an amortization schedule attached after my mother's death when I was going through her papers. The Debtor refused to pay her mortgage claiming that she was not going to pay *me*[2]; when a public administrator (the commissioner of finance of Putnam County, NY William Carlin)  was put in place in February 2008 after the Debtor's first attempt to gain control of my mother's estate was denied, the Debtor only paid him

---

[2]  See **Exhibit C** bottom of page 45 to top of 46.

for twelve months of payment through his tenure in October 2009 (consisting of about 22 months) which at that point my mother's will was admitted into probate after the Debtor failed in her attempts up through the NY Court of Appeals to defeat her own mother's will.  If she had defeated it, she stood to gain a substantial amount more than what her own mother chose to leave her via her will.

6. This Debtor looks for each and every way to not pay or to delay.  In fact, how does she, an attorney, bankrupt ONLY this mortgage and no other of her debt, when the rent of the premises covers the expenses of the mortgage and taxes?  The Debtor received since 2006 $1500.00 per month for rent of the house and now, ten years later, how much has the rent increased? These are facts she fails to disclose because they don't help her.

7. The Debtor also received after filing her bankruptcy almost TEN THOUSAND DOLLARS I paid to her as the executrix of my mother's estate for an interest she held pre-petition- my mother died in 2007.  See **Exhibit G** at page 62 Judge Pagones' decision.

8. Debtor is not current with her mortgage payments and has failed to provide the Estate with proof of insurance for the mortgage premises naming the Estate as an additional insured or proof of payment of real estate taxes for the premises as current.  She just does as she pleases without penalty.

# THE INFIRMITIES
## of the
## SCHWARTZ AFFIRMATION

9. Mr. Schwartz, in his paragraph 4, has no credibility when he tells this court that attorney fees are only pursuant to paragraph 19 of the mortgage. If he read paragraph 18 which provides for attorney fees, there is a typo in that paragraph of the document prepared[3] by the Debtor, which says this:

> **18**. Acceleration: Remedies. ….Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided **in this paragraph 19**, including but not limited to, reasonable attorneys' fees and costs or title evidence. *(emphasis supplied)*

10. The words "IN THIS PARAGRAPH" refer to the acceleration and remedies provisions of paragraph 18. Not paragraph 19. Plainly Mr. Schwartz lies about the ability of the Estate, the Lender, to seek attorney fees. He began with the falsehood that I, not the Estate I represent, filed a claim. This underscores the reason why the Debtor refused to pay, forced a foreclosure and why then her previous attorney Mr. Gjertsen provide a falsehood to Judge Forman when he and the Debtor requested an adjournment, not for the purposes of filing the bankruptcy, but to answer the foreclosure papers. See **Exhibit A**[4] at page 52, Mr. Gjertsen's letter to Judge Forman. Attorneys in NYS are not to lie to Judges.

---

[3]    The handiwork of the Debtor as an attorney is ever evident. See her affirmation dated July 11, 2017 which is titled "Affidavit with Supporting Law"- it is an affirmation, there is no supporting law-just overtly sloppy.

[4]    **Exhibit A** Contains the various correspondence and miscellaneous documents from the foreclosure.

11. The request for attorney fees are proper and in compliance with the mortgage prepared by the Debtor whose terms should be construed against her. But this is a typo she made and she should not be permitted to profit therefrom, especially when the plain language of paragraph 18 by use of the words "in this paragraph" clearly indicate paragraph 18 and not 19.

12. Next Mr. Schwartz attempts to denigrate[5] the legal services I have provided, at this point, for free to the Estate. Any fees awarded to the Estate will be paid to the Estate and then a request to the Surrogate can be made for payment via an appropriate accounting proceeding. SCPA §2205; SCPA §2307(a). The power of the Surrogate to independently inquire, even there is no opposition the request for attorney fees, is not abrogated. *Matter of Wiggins,* 85 NYS2d 518 (1995).

13. As required by NY law, I had to serve the foreclosure summons and complaint upon Philip, Carl and Andrea Marin as having a claimed interest in the Estate which was known to me via the Surrogate's Court action. NY's RPAPL §1311(1).

14. As a result of having so done what was required by NYS law, the Debtor and her cohort, Andrea Marin who was also disgruntled, each made a motion in foreclosure which the Estate had to address.

---

[5] For example-they treat an entire charge as administrative when in fact it really is not; when I compile legal documents, I am doing a legal review of them to make sure they say what they say and comport to the pleading or affidavit they are accompanying; once that is done, I do not have to had it over to any staff to copy- I merely place it in the copier to copy (less than a minute) to copy and move on to other legal work. That is why my time is set in blocks of time-I do not have the luxury of detailing each and every minute. See for example **Exhibit D** page 100 charge for March 29, 2010- I pop the papers in the machine and I then called the court, see **Exhibit D** page 103 charge for June 29, 2011, same routine- speaking with George Delaney about the case while drafting affidavit of service an putting one page in the copier; if I go to the post office to mail something, it is a ride of a few minutes each way.
    In over my 27 years of practice, I have always charge .30 for photocopying to cover for the cost of the photocopier and supplies and I have never been questioned about it until now and the same for faxes which is the same charge at the lower end any one can get commercially. These are reasonable costs under New York law. I also file and search public records on my own because I don't have staff and the Estate did and does not have the luxury of hiring third parties-doing it myself enables me to be hands on and if I need something else, I myself know it which a third party would not and I can continue. In the end, it is more efficient and I have had anyone dispute this method, because they actually prefer my attention to it.
    These complaints by the Debtor and her attorney are mountains they made out of molehills; if the billing is reviewed it is plainly evident it is not overwhelmed by "administrative" functions. The billing itself (**Exhibit D** page 99 and the items I did not charge for (**Exhibit D** page 16, paragraph 44) more than compensate Debtor for not being charged for those legal services in comparison for what any total of time they are complaining here.

15. Andrea Marin was infuriated at having been served. Ultimately Judge Dolan dismissed her motion. See his decision in **Exhibit B** which contains Andrea's motion and the responsive papers to such motion.

16. Then the Debtor attempted to dismiss the foreclosure action based upon her perception that the default notice was deficient. She failed. See Judge Sproat's decision in **Exhibit C** pages 133-136. Debtor's basis for her motion to dismiss was heavily premised upon the same complaints she makes now; see Debtor's moving affidavit in **Exhibit C** page 5, starting at her paragraph 12. Judge Sproat denied her and she should be estopped here from re-litigating the default notice.

17. Debotor fails to point out to this court, as she did with Judge Sproat, that the mortgage does not require notice of presentment. So all her complaints about the default notice are empty. The promissory note the Debtor signed contained this provision; see **Exhibit C** page 16, second to last paragraph of such promissory note.

18. Carolyn Minter was one of my mother's attorney's for a while. She appeared in the foreclosure action when the Debtor refused. In fact, most of our court conferences revolved around trying to get the Debtor to voluntarily make up her payments or come to court. She never provided any legal reason why she did not pay on this investment property where she was collecting rent-and for which she never provided any proof of eviction of any tenants for non payment of rent, *because* they were paying rent. She instead sent Carolyn Minter who was not able to provide any good reason why her friend who shared an office with her was not able to pay. Carolyn admitted to me that she knows the Debtor had to pay. When Judge Forman saw that the Debtor refused to show up before him as he directed, he authorized me to file a a note of issue to close out discovery, a

summary judgment motion and to include the attorney fees request. That is what happened and what I did. See my notes of the same in **Exhibit A** at page 36 and **Exhibit F** page 1 for Note os issue.

19. Mr. Schwartz is again lying when he claims at his paragraph 10 that I charged the Estate in the foreclosure action for what he terms an "Estate Probate Matter against Andrea Marin". ?? Where in the SCPA or the EPTL of NYS is there any such action? There is not. He made it up. What is an Estate Probate? Probate is to admit a will or not admit a will of a deceased person into probate. This is simply explained here: https://www.nycourts.gov/courts/nyc/surrogates/faqs.shtml under the definition of probate. An estate is created once a will is probated. So there is no such things as Estate Probate. Since he failed to delineate where this was charged in the billing, I cannot address it further and it is a phantom claim.

20. What Mr. Schwartz probably is complaining about is the motion Andrea Marin made in the foreclosure action and which was found to be inappropriate by Judge Dolan who issued a decision in favor of the Estate. See **Exhibit B** at pages 133-136.

21. Mr. Schwartz, again hearsay since he has no personal knowledge of the matter since he was not there, claims that I was in Dutchess County Supreme Court on April 11, 2011, see his paragraph 12; I was not. My only appearance was in April 2011 was on the 25th. If Mr. Schwartz read the previous billing entries, it is evidence that April 25, 2011 was set by the court in March 2011 when it directed Andrea Marin to inform the parties of the new court date since she was requesting adjournment upon adjournment due to her work schedule.

22. Mr. Schwartz has provided no proof that the Debtor appeared for the foreclosure action on April 25, 2011; he was not there and has no personal knowledge of it.  We were there for four hours because Judge Pagones ( who is our Surrogate) was sitting in as the Supreme Court duty Judge for Judge Dolan who was ill and who has since passed, because it was a heavy calendar that day.  If the Debtor did attend, she would have known this.  Parking in Poughkeepsie municipal lots was $1.00 per hour, and I paid four dollars hence four hour court time as noted on the billing.  Mr. Schwartz nor the Debtor dispute this.  Now that it is pointed out to them, they probably will.  See my notes from that conference in **Exhibit A** at page 36.

23. Most interesting is Mr. Schwartz' paragraph 14.  This is where you can plainly see another lie.  I charged the Estate for a court conference on May 30, 2012 that was attended by Carolyn Minter where she was severely late. **Exhibit A** at page 36 which notes the case was called at 9;30 am.  My billing is a business record kept in the ordinary course of business which  shows the topics discussed with Judge Forman. But Mr. Schwartz affirms this: "Carla charged…5 hours…*for another* settlement conference that I was told by my attorney that lasted about one hour." (emphasis supplied) WHO is your attorney Mr. Schwartz that went to a court conference with Judge Forman on May 30, 2012?  WHO?  And how do I compel settlement conferences before Judge Forman?  Isn't it Judge Forman who runs his own court like any other Justice?  To present such nonsense to this court shows the mindset to intentionally say whatever lie that comes to mind to attempt to defeat the Estate's claim.  He mocks and attacks my business record with conclusion, yet provide no records of his client or Carolyn Minter to oppose such records.

24. There is no rule or law that prohibits my time as an attorney to charge for travel time- how ridiculous is that? Attorneys spend much time traveling for clients to various courts around this state, from near and far. Nor does Mr. Schwartz provide any such law prohibiting the same.

25. As to my hiring abstract companies and employees to do administrative tasks, as a solo practitioner who represents an Estate that is in debt, what law requires me to do that Mr. Schwartz? If the Estate did not have the funds to pay third parties, it did not have the funds to pay third parties. I do not have staff. I do not have to hire staff, or abstract companies. The only way I was able to bring the foreclosure action for the Estate was because I was doing the work myself and waiting for payment if any. Mr. Schwartz was initially paid $10,000.00 by the Debtor as he disclosed. Why did he not wait for payment from the Debtor to help her out as he criticizes me for doing so for the Estate who did not have the funds to hire outside counsel and why should it when both Philip (my then co-executor) and I were attorneys?

26. These ridiculous standards from the Debtor's 20-20 favorable hindsight are made because she was able to for five years delay payments to the Estate. She made her bed in Dutchess County where the Surrogate exiled her as a beneficiary and she defied Judge Forman in the foreclosure. So she put her finger to the wind and knew she had to lie in that bed unless she found another; which she did; in the Southern District.

27. None of the complaints[6] of Mr. Schwartz makes is required under NYS law concerning attorney fees[7]. None. Nor has he so proven. The issue of attorney fees was discussed with Judge Forman on May 30, 2012 as part of settlement discussions[8] during that conference when Carolyn Minter had no authority to settle (and had no funds to so settle or any firm assurances of anything else), so he directed that they be part of any motion for summary judgment for his consideration. It was clear to myself and Carolyn Minter that Judge Forman was fed up with the Debtor and her tactics because nothing Carolyn Minter said in the conference swayed Judge Forman.

28. Nothing Carolyn Minter has stated in her affirmation was proven by her to have been made contemporaneous with her court appearances. She failed to produce any business records demonstrating what she says occurred- her affirmation rings hollow because of it. And it should.

29. Again Mr. Schwartz submits lies to this Court. He writes at his paragraph 18: "On March 18, 2010, Carla charged…..to review my boiler plate Verified Answer with Affirmative Defenses…" What Verified Answer did you ever have to serve to me Mr. Schwartz? Did I ever sue you so you had to produce an answer? No. And that is why what he affirms to is a lie.

30. In Mr. Schwartz's paragraphs 19, 21, 22 just makes statements without any objection-so I cannot understand what his problem is with those charges; he has something above his paragraph 15 that

---

[6]    The whole deal with Mr. Schwartz is really preposterous. Prior to the Debtor hiring him, he gave me an in-depth consultation of the Estate's claim in his office while I was waiting to attend a closing from an attorney who shared space with him and was running late. He really wanted me to hire him. But I did not. What he is doing now is in direct contravention of the advice he gave me. I knew Mr. Schwartz years ago when he represented a client of mine. I brought this conflict up at the deposition he wanted to take of me and then, just like that, the deposition ended.

[7]    The motion for attorney fees was made in the foreclosure motion for summary judgment PURSUANT to NYS law. See **Exhibit D** Motion for Summary judgment and request for a Receiver at page 16 starting at paragraph 43.

[8]    See my fax letter to Carolyn Minter on May 17, 2012 prior to the May 30, 2017 conference with Judge Forman discussed *supra*, in **Exhibit A** page 42 reminder her she was supposed to let me know if Debtor was going to pay off the mortgage (another falsity to promote more delay. )

makes no sense ; "23.25 Hours @ $325 an hour or $7,556.25" which is just a mathematical calculation and nothing more as is paragraph 26.

31. As to Mr. Schwartz's paragraph 20, the Debtor served discovery demands. I reviewed them thoroughly. See them in **Exhibit E**. He then incredulously complains I did not object or respond to them. Well if his client complied with Judge Forman's directive to show up before him, he would not have directed discovery to be over and authorize that I file a motion for summary judgment.

32. The sleight of hand Mr. Schwartz in his paragraph 21, utilized by his characterization of my August 2 & 7 2012 charges is really the height of arrogance. He fails to truthfully present the billing for that date: the review of those papers where to pull exhibits for my affidavit in opposition to Andrea Marin's motion that Judge Dolan denied. I was making a legal decision as to which legal documents were or were not necessary to the motion. See the breast & extent of my summary Judgment motion in **Exhibit D**. He omits this entirely and claims " Not one of these documents has anything to do the issues regarding the foreclosure at issue in this action." He is wrong. Those documents were for my affidavit which was what defeated Andrea Marin's motion before Judge Dolan in the foreclosure.

33. As to his paragraph 23, Mr. Schwartz again has no idea what he is talking about concerning my exhibits to answering papers to a motion I defeated. His complaints about my exhibits concerning the Debtor's cohort, Andrea Marin, concerning a police report where she told the officer on a death notification she was glad her mother was dead and the untruths she told in her deposition in the

probate proceedings etc. where directly attacking her veracity.  See those exhibits in **Exhibit B**, pages 23 at footnote 5.

34. Again another statement is in Mr. Schwartz' paragraphs 24. He does not dispute those charges.

35. Judge Dolan's decision on Andrea Marin's motion defeats Mr. Schwartz's scurrilous lies in his paragraph 25 when he claims "Carla's charge… against Andrea was not necessary since Andrea did not have a legal or equitable claim to the property being foreclosed as Andrea stated in her motion to dismiss. Carla eventually released Andrea from the case two years later when she filed for summary judgment against Debra Marin."  The constant lying by Mr. Schwartz is incredible. Again refer to **Exhibit B** and  RPAPL §1311(1).  Mr. Schwartz should really leave the practice of law to attorneys who know the law.

36. Again in his paragraph 27, it is pure nonsense what Mr. Schwartz claims. I performed those tasks and have every right as an attorney under NYS law to seek payment; my time as is many attorneys is compensated on a per hour basis.  Phone calls to a court, other litigants, other attorneys by an attorney are compensable as is drafting letters and the like.  And further as Mr. Schwartz fails to detail what work on the days he lists in paragraph 27, it is impossible to rebut when my billing was not as he presented in such paragraph.  This is the same problem with his paragraph 28.

37. Mr. Schwartz fails in his paragraph 29 to comprehend I am not a US Trustee.  I am not an attorney who represented a party in a bankruptcy.  My fees are based on being a NYS attorney in a NYS

Supreme Court matter that follows NYS law on the awarding of attorney fees[9]. That is how the motion was required to be made in a NYS court. These are pre-petition fees at issue here. For the legal basis for the request of payment of legal fees in the Estate's motion for summary judgment, see **Exhibit D** at page 16 starting at paragraph 43. New York law should be applied as to reasonableness.

### THE INFIRMITIES OF THE DEBTOR'S AFFIRMATION

38. As to the Debtor's affirmation, her paragraph 1 is a conclusion and not required to be rebutted.

39. As to her paragraph 2, she is just as wrong as Mr. Schwartz in his paragraph 4 of his affirmation discussed supra in my paragraphs 7-9 herein. She also denies preparing the mortgage for my mother. This bare and conclusive denial does not offer any other explanation *as to whom may have prepared* this legal document for our mother in her sale. I did not. Debtor certainly knows who prepared a document she signed: she herself. The record and return on the mortgage is to the Debtor. Further, the Debtor has no problem ponying up sworn statements from Carolyn Minter and Andrea Marin to purport to support Debtor's "facts" to object to the claim, so why is there not any sworn statement from a third party or an attorney who supposedly did prepare the mortgage note? It is because the Debtor is lying. She prepared the mortgage.

---

[9] "When equally sophisticated parties negotiate a loan agreement that provides for recovery of collection costs upon default, courts should presume, absent a clear showing to the contrary, that the creditor gave value, in the form of a contract term favorable to the debtor or otherwise, in exchange for the collection costs provision. Such a creditor should recover more in the division of the debtor's estate because it gave more to the debtor at the time it made the loan. Rather than providing an undeserved bonus for one creditor at the expense of others, allowing a claim under a collection costs provision merely effectuates the bargained-for terms of the loan contract." *United Merchants v. Equitable Life*, 674 F.2d 134 (2nd Circuit 1982).
Further, "[t]he validity and construction of the (contract clause providing for recovery of costs) must ... be judged according to (state) law….'", *Id*., relying on *In re* Cont'l Vending Mach. Corp., 543 F.2d 986 (2d Cir. 1976).
The attorney fee clause in paragraph 18 of the mortgage is sufficiently broad to permit the collection of my bankruptcy fees from the Debtor. *Travelers Casualty and Surety Company of America, v. Pacific Gas and Electric* Company, 549 U.S. (2007).

40. Debtor fails to identify from which documents she is quoting in her paragraphs 5 and 6, thereby rendering an inability for me to rebut anything.

41. Her paragraph 7 is defeated by her own documentary evidence of the mortgage note's paragraph 18 which, as above stated in my paragraphs 7-9, clearly state "IN THIS PARAGRAPH". Further, I did not make an attorney fee request as Debtor claims, the Estate filed a claim for my attorney fees incurred by it.

42. Debtor's paragraph 8 fails to identify which of my many summary judgment motions I have made in all my years of practice. Assuming, as I have to since Debtor failed to specify, she means the foreclosure summary judgment motion.

43. Again, in Debtor's paragraph 8 she claims I personally filed a claim; I did not file any claim. Also, I did not authorize nor sign any amended claim reducing the Estate's claim to around nineteen thousand dollars so I do not know what that is about.

44. Debtor's paragraph 9 is a mere non probative statement of conclusion. Again, NYS law does not require what she claims. And I did not charge the estate to "compile…billing notes" as Debtor claimed. Where in my billing did I charge for something like that? She does not even point out where since it is false.

45. Debtor's paragraph 10 has no reference to my billing so I cannot address it-meaning she fails to point out any dates per such bill.

46. In her paragraph 11, without reference dates, it is a mere statement of the Debtor. Even if she provided a date in relation to my billing, she never even states under oath she was present at the

court to even opine as to how long the court was. She failed to provide any kind of proof other than her own, empty say so.

47. Her paragraphs 12 and 13 are really ridiculous. By the time we got in to see the court clerk that day it was probably thirty minutes. I am entitled to charge for traveling to and from Poughkeepsie- about a 30-40 minute ride from Carmel NY each way, and entitled to charge for sitting waiting to be called by the court and for the actual court conference where it was attempted to be settled- Debtor refused-and to fill out a preliminary conference order. What bubble does the Debtor and her attorney live in? Further, Carolyn Minter's affirmation provides no probative value-no billing, no contemporaneous record of an event in 2012 she claims to remember crystal clearly in her friend's favor in 2017. And for the April 25, 2012 court conference, she was severely late, so my time waiting for her is not compensable? Why did the Debtor not show up instead? There is no explanation for that either.

48. Her paragraph 14 is hearsay and should be rejected as such.

49. Her paragraph 15 is a statement that has no probative value.

50. Her paragraph 16, 17 are statement without probative value.

51. Her paragraph 18 claims her answering pleading in the foreclosure was boiler plate-it was not- it was filled with ridiculous things, see **Exhibit G** starting at page 48 her answer to the foreclosure complaint and see **Exhibit C** the papers on Debtor's foreclosure summary judgment motion and Judge Sproat's decision denying that motion giving no credence to her claims about the default notice in **Exhibit G** page 33 and in **Exhibit C** page 44.

52. Her paragraph 19 is just as most of the others above, recitation of conclusion without probative value. If she cannot read my billing to understand that I had to travel with George Delaney to the post office so he could serve papers by mail and I had to be there to write a check from the Estate account once the mailing was weighed so George did not have to pay and get reimbursed, then there is, as usual, no ability to reason with the Debtor. To travel to the post office is about three minutes each way from my office by car.

53. Her paragraph 20 is plain nonsense from an attorney as it was from Mr. Schwartz. There is no requirement that I respond to her demands once Judge Forman directed discovery closed by authorizing the filing of a note of issue from her failure to follow his directive and appear before him. It is called a sanction if she has not realized it by now. See **Exhibit F**, Note of Issue at page 5; CPLR §3402.

54. Her paragraph 21 is yet another statement without probative value.

55. Her paragraphs 22, 26 are more math calculations.

56. Her paragraph 23 fails to comprehend the CPLR of NYS. I responded to a motion directed against the Estate by Andrea Marin and Judge Dolan ruled against Andrea Marin. See **Exhibit B** the responsive papers that defeated the motion to dismiss. The same way Judge Sproat ruled against the Debtor for making her motion to dismiss. See **Exhibit C**. The same way Judge DiBella, our first Surrogate, and the Appellate Division 2nd Department and the Court of Appeals all did not rule in her favor. See http://www.nycourts.gov/reporter/3dseries/2011/2011_02011.htm; http://www.nycourts.gov/reporter/motions/2011/2011_76229.htm.

57. Her paragraph 25 is yet another statement without probative value and an outright lie. Andrea made a motion in the foreclosure, the Estate answered it and Judge Dolan ruled for the Estate. See **Exhibit B**. Filing a motion for summary judgment does not release anyone from a case- the Debtor needs to learn the CPLR.

58. Her paragraph 27 is conclusion without basis. Attorneys can make and charge for phone calls, whether to other parties, third parties, the court and anyone who works for the court system, to draft documents, review faxes and the like. This paragraph of the Debtor also fails to delineate any particular charge on any particular billing date, so her assumptions are just that and the paragraph lacks probative value, as is her paragraph 28.

59. The response to her paragraph 29 is the same as the response to her attorney's paragraph 29 in my paragraph 33 above.

60. What the Debtor does not acknowledge, is that she defaulted on the mortgage in 2007, she refused to pay all of her mortgage payments without valid reason, she was put on notice in court on January 30, 2008 that she has not submitted her mortgage payments, see **Exhibit C** Foreclosure Summary Judgment motion's Surrogate Court transcript starting at page 71; she failed to address the default notice served on her by mail in December 2009, and, she cavalierly stated in court on January 29, 2010 when asked, on the record, why she was not paying, she answered "No, your Honor. Ms. Marin can make her application on paper." See **Exhibit C** Foreclosure Summary Judgment motion's Surrogate Court transcript starting at page 74. So I did. The foreclosure action was filed in February 2010 and she was served in March 2010. She still refused to pay and the summary judgment motion was brought in August 2012. In all this time, she and her attorneys,

merely claim she 'wanted' to pay[10]. In all these years she wanted to pay but did not; her claims were untrue, as she still is not current with mortgage payments that she is required to have paid post bankruptcy filing. In any event 'wanting' to pay is not the same as paying.

### THE INFIRMITIES of the MINTER AFFIRMATION

61. As to Carolyn Minter's affirmation, if it is believed that she was retained-where is the retainer-why would the Debtor spend money hiring attorneys- Ms. Minter, Mr. Gjertsen and Mr. Schwartz if her client's true intention was, as Ms. Minter tries to assert, "… to reinstate the note and mortgage and pay the arrears." ?  Really?  No. Where are the checks that we were waiting for during the probate and during the foreclosure?  See my paragraph 56 above.  From 2007 through 2012 she had every opportunity to resolve the problem and decided to buck everyone, Judges included, and file for bankruptcy.  Agains the same delays here, five years later, she has benefitted from each and every delay by hiding in Chapter 13. So, no.

62. Carolyn Minter's affirmation paragraph 1 are empty words that are just not true.

63. As to Ms. Minter's paragraph 2, she provides no documents for why my billing is incorrect.  She has no proof; she states she BELIEVES she arrived at court around 11:45 am but then states the conference ended at about 12.15 on April 25, 2012.  Where is her billing as a contemporaneous record?  She has none.

64. As to her paragraphs 3&4, Judge Forman rejected empty words of compliance for the Debtor coming from her attorney without any concrete solution for payment or settlement.  Judge Forman

---

[10] See **Exhibit A** page 42 my lMay 17, 2012 letter in the foreclosure action to her then attorney Carolyn Minter where she failed to do anything after court conferences in foreclosure and where I enclose to her information Judge Drain suggested be sent to her from our April 25, 2012 conference, see Exhibit A page 36 April 25, 2012 notes;

directed the Debtor to appear at the May 30, 2012 conference, as he directed Andrea Marin to show up on April 25, 2012 which she failed to do and instead provided a nasty letter to Judge Forman because he wanted to know who was preparing legal papers[11] for her.  See **Exhibit A** page 37 (court letter) and page 39 (Andrea's nasty response).  To express to a Judge a client's "desire" to do something without any explanation why the client did nothing in five years (from 2007-2012) fell on deaf ears in chambers. See footnote 8 *supra* demonstrating the same thing.  In order to "reinstate" the note, as Judge Forman pointed out, where was the funds?  Ms. Minter came empty handed as her empty words are today.  Pay attention to what Carolyn Minter says here and it is completely understandable why Judge Forman closed discovery and gave permission to file a motion for summary judgment: "Carla Marin would not acknowledge that Debra Marin did not owe her mother…any mortgage payment at the time of her death in November 2007 as evidenced by cancelled checks provided by Debra Marin".  When Carolyn Minter produced no checks to Judge Forman as proof of such a statement, why would I admit that falsity? What checks does Carolyn Minter provide here to at least prove a part of that statement she made?  None.  She had nothing to provide at the court conference on 4/25/12 either[12].  If it were not for my billing records, Carolyn Minter and the Debtor would not have any records of what occurred in the foreclosure.  And, at the time the foreclosure action was filed, much more that what was owed at the time of my mother's death renders Ms. Minter's statement then, or now, false.  The foreclosure was not about

---

[11] When Judge Dolan denied Andrea's motion to dismiss in May 2010, he directed her to serve an answer if she so wished.  She did and thereby inserted herself into the foreclosure action.  That answer was rejected by the Estate per the CPLR. She then engaged in letter writing seeking adjournments.  Then in May 2011 Debtor filed a motion to dismiss representing herself.  In July 2011 Judge Sproat denied the Debtor's motion.  When Ms. Minter filed a notice of appearance in September 2011, she requested a compliance conference and we were assigned to Judge Forman.  The only legal traction Debtor has received was in Bankruptcy.

[12] Carolyn Minter only produce three pages at out May 30, 2017 cancelled checks for taxes and insurance see **Exhibit A** starting at page 47.  This receipt was duly recorded in my business records (billing) see **Exhibit D**, page 105, charge for May 30, 2012.

what was owed at my mother's death; it was what was owed to my mother's Estate at the time of, and after, the filing of the foreclosure action.

65. Paragraph 4 of Ms. Minter's affirmation is purely ridiculous. Judge Forman directed that a summary judgment motion could be made by the Estate when he closed out discovery since the Debtor and Andrea Marin refused to show up before him. It was after that green light from Judge Forman, I said in chambers I would file such a motion. Ms. Minter tries to falsely characterize my actions as if they were unilateral without court knowledge or permission.

**WHEREFORE** the motion should be denied it its entirety.

Dated: Carmel, NY
September 29, 2017

_____
**CARLA L. MARIN**